ACCEPTED
03-14-00189-CR
4744958
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/2/2015 12:47:06 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00189-CR

IN THE
THIRD COURT OF APPEALS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/2/2015 12:47:06 PM
JEFFREY D. KYLE
Clerk

FRED ROBERT SCHNEIDER, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from Williamson County

\* \* \* \* \*

**STATE'S RESPONSE BRIEF**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
512/463-1660 (Telephone)
512/463-5724 (Fax)

**ORAL ARGUMENT REQUESTED**

# SUPPLEMENTAL LIST OF PARTIES

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **Response to Issue 1:**     **Appellant's blood alcohol content was admissible**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **Response to Issue 2:**     **There was no disputed issue of fact for the jury to decide**. . . . . . . . . . . . . . . . . . . . . . . . . 27

    **Response to Issue 3:**     **The *Ex Post Facto* Clause does not apply to enhancement provisions like 49.09**. . . . . . . . . 30

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# INDEX OF AUTHORITIES

**Cases**

*State v. Anderson*, 445 S.W.3d 895 (Tex. App.–Beaumont 2014, no pet.) . . . . . . 20

*Bailey v. State*, 03-09-00276-CR, 2010 Tex. App. LEXIS 4584
    (Tex. App.–Austin June 18, 2010, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . 32, 33

*Bartlett v. State*, 270 S.W.3d 147 (Tex. Crim. App. 2008). . . . . . . . . . . . . . . . . . 23

*United States v. Biswell*, 406 U.S. 311 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bowman v. State*, 05-13-01349-CR, 2015 Tex. App. LEXIS 1285
    (Tex. App.–Dallas Feb. 10, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*New York v. Burger*, 482 U.S. 691 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Calder v. Bull*, 3 U.S. 386, 390 (1798). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Carmell v. Texas*, 529 U.S. 513 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Castillo v. State*, 03-07-00546-CR, 2008 Tex. App. LEXIS 6225
    (Tex. App.–Austin Aug. 14, 2008, no pet.). . . . . . . . . . . . . . . . . . . . . . 32, 33

*Cheek v. United States*, 498 U.S. 192 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Clay v. State*, 391 S.W.3d 94 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . . . . 14

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . 23

*Cobb v. State*, 85 S.W.3d 258 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . 31

*Colburn v. State*, 966 S.W.2d 511 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . 6

*Cole v. State*, __S.W.3d__, 2014 Tex. App. LEXIS 13498
    (Tex. App.–Texarkana Dec. 18, 2014, pet. filed). . . . . . . . . . . . . . . . . 6, 7, 8

*Conelly v. State*, 451 S.W.3d 471 (Tex. App.–Houston [1st Dist.] 2014, no pet.). 32

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011). . . . . . . . . . . . 15

*Douds v. State*, 434 S.W.3d 842 (Tex. App.–Houston [14th Dist.] 2014)
(en banc) (pet. granted, argued March 18, 2015). . . . . . . . . . . . . . . 7, 21, 28

*Evans v. State*, 14-13-00642-CR, 2015 Tex. App. LEXIS 1237 (Tex.
App.–Houston [14th Dist.] Feb. 10, 2015) (motion for rehearing filed).. . . 20

*Forsyth v. State*, 438 S.W.3d 216 (Tex. App.–Eastland 2014, pet. ref'd) . . . . . . . 20

*Gallups v. State*, 151 S.W.3d 196 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . 17

*Gore v. State*, 451 S.W.3d 182, 2014 Tex. App. LEXIS 12326
(Tex. App.–Houston [1st Dist.] 2014, pet. filed) . . . . . . . . . . . . . . . . 8, 9, 10

*Griffin v. Wisconsin*, 483 U.S. 868 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Grimes v. State*, 807 S.W.2d 582 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . . 31

*State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . 5

*Kentucky v. King*, 131 S. Ct. 1849 (2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Maryland v. King*, 133 S. Ct. 1958 (2013) .. . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Knights*, 534 U.S. 112 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Leal v. State*, 452 S.W.3d 14 (Tex. App.–Houston [14th Dist.] 2014, pet. filed,
remanded). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Madden v. State*, 242 S.W.3d 504 (Tex. Crim. App. 2007). . . . . . . . . . . . 27, 28, 30

*McDonald v. Massachusetts*, 180 U.S. 311 (1901).. . . . . . . . . . . . . . . . . . . . . . . 32

*Missouri v. McNeely*, 133 S. Ct. 1552 (2013).. . . . . . . . . . . . . . . . . . . . . . *passim*

*Mills v. State*, 296 S.W.3d 843 (Tex. App.–Austin 2009, pet. ref'd). . . . . . . . . . . 28

*Ornelas v. United States*, 517 U.S. 690 (1996).. . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Riley v. California*, 134 S. Ct. 2473 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Roaden v. Kentucky*, 413 U.S. 496 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Robinson v. State*, 377 S.W.3d 712 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . 28

*Samson v. California*, 547 U.S. 843 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Saucedo v. State*, 03-06-00305-CR, 2007 Tex. App. LEXIS 4292
    (Tex. App.–Austin May 30, 2007, no pet.).. . . . . . . . . . . . . . . . . . . . 32, 33

*Schmerber v. California*, 384 U.S. 757 (1966).. . . . . . . . . . . . . . . . . . . . . 6, 9-10

*Scott v. State*, 55 S.W.3d 593 (Tex. Crim. App. 2001).. . . . . . . . . . . . . . 31, 32, 33

*Shaw v. State*, 529 S.W.2d 75 (Tex. Crim. App. 1975). . . . . . . . . . . . . . . . . . . . 32

*Mich. Dep't of State Police v. Sitz*, 496 U.S. 444 (1990) . . . . . . . . . . . . . . . . . . . 4

*Snowden v. State*, 353 S.W.3d 815 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . 22

*Sutherland v. State*, 436 S.W.3d 28 (Tex. App.–Amarillo 2014, pet. filed) . . . . . 21

*Townsend v. State*, 03-05-00766-CR, 2007 Tex. App. LEXIS 5940
    (Tex. App.–Austin July 26, 2007, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . 32

*State v. Villarreal*, 2014 Tex. Crim. App. LEXIS 1898
    (Tex. Crim. App. Nov. 26, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000).. . . . . . . . . . . . . . . . 22

*White v. State*, 201 S.W.3d 233 (Tex. App.–Fort Worth 2006, pet. ref'd) . . . . . . 30

**Statutes, Codes and Rules**
TEX. CODE CRIM. PROC. art 14.03(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. CODE CRIM. PROC. art. 18.01(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. CODE CRIM. PROC. art. 36.13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

TEX. CODE CRIM. PROC. art. 38.23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

TEX. PENAL CODE § 49.04(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

TEX. PENAL CODE § 49.09. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

TEX. R. APP. P. 44.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. TRANSP. CODE § 724.012(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

No. 03-14-00189-CR

IN THE
THIRD COURT OF APPEALS

FRED ROBERT SCHNEIDER, Appellant

v.

THE STATE OF TEXAS, Appellee

\* \* \* \* \*
**STATE'S RESPONSE BRIEF**
\* \* \* \* \*

TO THE HONORABLE THIRD COURT OF APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully presents to this Court its brief in the named cause.

## STATEMENT REGARDING ORAL ARGUMENT

The State requests oral argument on the first issue. Respectfully, many of the courts of appeals that have considered exigent circumstances post-*McNeely*[1] have missed the point. Oral argument will assist the Court to better guide practitioners and judges in its jurisdiction.

---

[1] *Missouri v. McNeely*, 133 S. Ct. 1552 (2013).

1

## SUMMARY OF THE ARGUMENT

First, regardless of the resolution of *Villarreal* in the Court of Criminal Appeals, the delay caused by appellant's flight from the scene and escalation of the situation, combined with the two hours it would take to secure a warrant once the arrest was effectuated, made a warrantless blood draw reasonable. Second, appellant was not entitled to his proposed article 38.23 instruction because it posed no question of disputed fact; there was no evidence a warrant was obtained, and whether there were exigent circumstances is a question of law. Third, the use of prior convictions in an enhancement provision does not present any *ex post facto* issue because it does nothing to make the present offense worse than it was at the time it was committed.

## ARGUMENT

**Response to Issue 1:** **Appellant's blood alcohol content was admissible**

The Court of Criminal Appeals held in *State v. Villarreal* that reliance on the blood draw statute to secure blood without a warrant is unconstitutional, but the propriety of that holding is presently being considered.[2] Regardless of the outcome of that case, this case presents exigent circumstances that made the warrantless blood draw reasonable. Alternatively, overwhelming evidence of impairment and a defense

---

[2] *State v. Villarreal*, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014) (State's motion for rehearing granted, submitted Mar. 18, 2015). *See* TEX. TRANSP. CODE § 724.012(b).

2

strategy of calling the BAC "meaningless" shows that any error in admitting that evidence was harmless.

*Villarreal*

Appellant relies primarily on the Court of Criminal Appeals' opinion in *Villarreal*, which was recently resubmitted on the State's motion for rehearing. This Court has chosen to hold its cases dealing with the statute. A decision in *Villarreal* will hopefully issue soon, and if the Court of Criminal Appeals holds that a warrantless blood draw is reasonable under the circumstances then this issue is resolved in the State's favor. This Court is undoubtedly familiar with the arguments, but the State will briefly summarize its position.

The ultimate touchstone of the Fourth Amendment is "reasonableness," which generally requires that law enforcement officials who search for evidence of criminal wrongdoing obtain a warrant.[3] While it cannot be argued that the circumstances set out by the Legislature fit neatly within one of the currently recognized exceptions to the warrant requirement, it has elements of each that, in aggregate, compel a finding of reasonableness under the totality of the circumstances:

- The blood draw statute is part of a complex administrative scheme of licensing and suspension that is not criminal in nature despite its overlap with DWI

---

[3] *Riley v. California*, 134 S. Ct. 2473, 2482 (2014).

3

prosecutions.[4]

- Legitimate expectations of privacy are diminished by the fact of valid arrest based on probable cause.[5]

- The discretion of officers is limited; an officer is required to obtain blood under enumerated circumstances that include arrest based on probable cause, and cannot otherwise do so without consent or a warrant.

- Those circumstances are reasonable for administrative purposes, *i.e.*, tracking repeat offenders and identifying the cause of accidents resulting in injury on public roadways.

- For repeat offenders like appellant, a blood draw is further justified because his familiarity with the process stemming from at least two other arrest and prosecutions augments the established presumption that citizens are familiar with the laws that govern them.[6]

---

[4] *See* TEX. TRANSP. CODE §§ 724.032-042. *Compare with New York v. Burger*, 482 U.S. 691, 713-14 (1987) (junkyard regulatory warrantless inspection scheme, which may be conducted by police, promotes the same goal as criminal laws by deterring auto theft); *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 449-50, 453-55 (1990) (upholding checkpoint to discover drunk-drivers as reasonable and noting that dispensing with individualized suspicion does not always require a non-criminal law-enforcement purpose).

[5] *See Riley*, 134 S. Ct. at 2485 (reduced privacy expectations by virtue of arrest); *Maryland v. King*, 133 S. Ct. 1958, 1979 (2013) ("A brief intrusion of an arrestee's person is subject to the Fourth Amendment, but a swab of this nature does not increase the indignity already attendant to normal incidents of arrest.").

[6] *Cheek v. United States*, 498 U.S. 192, 199 (1991) ("Based on the notion that the law is definite and knowable, the common law presumed that every person knew the law. This common-law rule has been applied by the Court in numerous cases construing criminal statutes."); *see also United States v. Biswell*, 406 U.S. 311, 315-16 (1972) (administrative search of firearms business reasonable because owner was aware of statutory authorization and time, place, scope limitations). *Cf. Griffin v. Wisconsin*, 483 U.S. 868, 873-80 (1987) (regulation authorizing warrantless search of probationer's home based on "reasonable grounds" that there is contraband); *United States v. Knights*, 534 U.S. 112, 119-22 (2001) (search of probationer reasonable based on a known and accepted *cart blanche* probation search condition and reasonable suspicion of wrongdoing); *Samson v. California*, 547 U.S. 843, 852-56 (2006) (suspicionless search of parolee's

(continued...)

4

- The reasonableness of the method is well-established,[7] and the proposed use—a search limited to intoxicants—is more limited than in other cases upheld by the Supreme Court.[8]

- And, of course, while the dissipation of blood alcohol evidence is not an exigency *per se*, it is an important factor in determining the lawfulness of a warrantless search.[9]

Viewed as a whole, the circumstances required to satisfy the statute make a warrantless blood draw reasonable.

Exigent circumstances

The preference for a warrant is excused when "the exigencies of the situation" make the needs of law enforcement so compelling that a warrantless search is objectively reasonable.[10]  One such exigency is the need to prevent the imminent destruction of evidence.[11]  To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, courts look to the totality of

---

[6](...continued)
person reasonable based on a known and accepted *cart blanche* parole search condition).

[7]     *See State v. Johnston*, 336 S.W.3d 649, 659 (Tex. Crim. App. 2011) (holding that blood draws are reasonable and noting that a small sample is taken).

[8]     *Compare with King*, 133 S. Ct. at 1967 (DNA swab taken at book-in used for identification and unsolved crime comparison).

[9]     *McNeely*, 133 S. Ct. at 1568.

[10]    *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (citations omitted).

[11]    *Id*.  (citations omitted).

circumstances.[12]  As it pertains to blood draws, "The relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before drawing a blood sample would significantly undermine the efficacy of a blood-alcohol test."[13]

## *McNeely*

Nearly two years ago, the Supreme Court rejected the argument that "the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations."[14]  Although *McNeely* represents nothing more than the reaffirmation that, "Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances,"[15] it has created much confusion in the courts of appeals.

---

[12]  *McNeely*, 133 S. Ct. at 1559.

[13]  *Cole v. State*, __S.W.3d__, 2014 Tex. App. LEXIS 13498 at *14 (Tex. App.–Texarkana Dec. 18, 2014, pet. filed) (citing *McNeely*, 133 S.Ct. at 1561; *Schmerber v. California*, 384 U.S. 757, 770 (1966)); *see also Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998) ("We apply an objective standard of reasonableness in determining whether a warrantless search is justified, taking into account the facts and circumstances known to the police at the time of the search.").

[14]  *McNeely*, 133 S.Ct. at 1558.

[15]  *Id*. at 1563.

For example, at least two courts require that police face a "now or never" situation, *i.e.*, there is a substantial risk that the evidence will become permanently unavailable if they do not act immediately in the absence of a warrant.[16] This is the scenario presented in the typical exigent circumstances case: if police do not intervene, the evidence will be lost forever.[17] *McNeely* acknowledged the "now or never" language relied upon in *Douds* and *Cole* but cautioned that "[t]he context of blood testing is different in critical respects from other destruction of evidence cases."[18] On one hand, there is no mere "risk" that evidence will be lost. "[I]n every case the law must be concerned that evidence is being destroyed"[19] because "'the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as

---

[16]  *Douds v. State*, 434 S.W.3d 842, 850 (Tex. App.–Houston [14th Dist.] 2014) (en banc) (pet. granted, argued March 18, 2015) ("a search 'without prior judicial evaluation' is reasonable '[w]here there are exigent circumstances in which police action literally must be now or never to preserve the evidence of the crime.'") (quoting *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973)); *see also Cole*, 2014 Tex. App. LEXIS 13498 at *28 ("Assuming the same forty-minute delay in drawing his blood, Cole's blood could have been drawn pursuant to a warrant before 2:00 a.m., only an hour and forty minutes after it was actually drawn. Therefore, this fails to reach the 'now or never' level contemplated by exigent circumstances precedent.").

[17]  *See King*, 131 S. Ct. at 1857 ("Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain.").

[18]  *McNeely*, 133 S. Ct. at 1561.

[19]  *Id*. at 1568.

the body functions to eliminate it from the system.'"[20]  On the other hand, "BAC

evidence is lost gradually and relatively predictably," making technological advances

that make getting a warrant easier more relevant than in the typical exigency case.[21]

This is why metabolization, on its own, is not "a sufficient basis for a warrantless

search everywhere and always."[22]

But it has not become a non-issue, as the "important countervailing concerns"[23]

caused by delay have not disappeared post-*McNeely*.  Again, some courts of appeals

have used *McNeely*'s "gradual and predictable" language in isolation to dismiss

delays of up to three hours based on the availability of retrograde extrapolation.[24]

The First Court did so despite accepting that a three hour delay would cause an

---

[20]   *Id*. at 1560 (quoting *Schmerber*, 384 U.S. at 770).

[21]   *Id*. at 1562-63 & n.6.

[22]   *Id*. at 1563 n.6.

[23]   *Id*. at 1563.

[24]   The First Court, for example, held:
Nothing else in the record explains why Officer McIntyre did not have time to get a warrant before the evidence was destroyed, especially, when, as noted by the *McNeely* court, 'BAC evidence from a drunk-driving suspect naturally dissipates over time *in a gradual and relatively predictable manner*.'  Even if McIntyre had to wait the maximum estimated three hours for a warrant, it is likely that the BAC evidence would have nonetheless been available in light of its 'predictable manner' of dissipation.
*Gore v. State*, 451 S.W.3d 182, 197 (Tex. App.–Houston [1st Dist.] 2014, pet. filed) (quoting *McNeely*, 133 S. Ct. at 1561) (emphasis added in *Gore*); *see also Cole*, 2014 Tex. App. LEXIS 13498 at *28 ("the 'now or never' level contemplated by exigent circumstances precedent" was not reached because the suspect's blood could have been drawn pursuant to a warrant "only an hour and forty minutes after it was actually drawn.").

average drop in BAC of .06.[25] That is a loss of three fourth's of the evidence required for a conviction. This conflicts with the plain language of *McNeely*: "While experts can work backwards from the BAC at the time the sample was taken to determine the BAC at the time of the alleged offense, longer intervals may raise questions about the accuracy of the calculation."[26] And, "Regardless of the exact elimination rate, it is sufficient for our purposes to note that because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results."[27]

These post-*McNeely* holdings also conflict with the facts of *Schmerber*. Schmerber was driving a car that struck a tree.[28] The officer noticed signs of intoxication at the scene and again at the hospital within two hours of the accident.[29] He then arrested Schmerber and directed a doctor to take a blood sample.[30] The Supreme Court's entire analysis is four sentences:

The officer in the present case, however, might reasonably have believed that

---

[25] *Gore*, 451 S.W.3d at 198 n.6.

[26] *McNeely*, 133 S. Ct. at 1563.

[27] *Id*. at 1560-61.

[28] *Schmerber*, 384 U.S. at 758 n.2.

[29] *Id*. at 768-69.

[30] *Id*. at 769, 758.

he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened "the destruction of evidence." We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.[31]

Of course, it was not literally true that there was "no time to . . . secure a warrant." The Supreme Court merely recognized that any additional delay would reasonably result in a constitutionally significant "destruction of evidence." Any claim that a two or three hour delay does not "negatively affect the probative value of the results" is insupportable.

Perhaps in anticipation of this argument, the First Court held, "To accept [assistant district attorney] Reed's testimony that it usually takes two to three hours to get a warrant as sufficient evidence of exigency in every DWI case would be to create a *per se* exigency rule, which *McNeely* expressly prohibits."[32] This is an abuse of *McNeely*'s "*per se*" language. *McNeely* does not say that no fact can, in combination with the fact of dissipation, create an exigency. It says only that the fact of dissipation *on its own* does not create an exigency. As *Schmerber* demonstrates,

---

[31]  *Id*. at 770-71 (citation omitted).

[32]  *Gore*, 451 S.W.3d at 197.

10

dissipation plus significant time equals exigency. What *McNeely* does remind us is that the significance of delays diminishes as available technology progresses.[33] But, absent evidence of access to—and statutory authority to use[34]—technology that makes obtaining warrants easier, or access to a magistrate at the jail 24/7, it is simply incorrect to say that proof that a warrant would delay obtaining a blood sample an additional two to three hours does not make a warrantless blood draw reasonable.

Nor is it proper to reject exigent circumstances based simply on the lack of a record on every conceivable piece of relevant information. In response to the *McNeely* dissent's complaint "that officers in the field will be unable to apply the traditional totality of the circumstances test in this context because they will not know all of the relevant facts at the time of an arrest," the majority responded:

> But because "[t]he police are presumably familiar with the mechanics and time involved in the warrant process in their particular jurisdiction," we expect that officers can make reasonable judgments about whether the warrant process would produce unacceptable delay under the circumstances. Reviewing courts in turn should assess those judgments "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"[35]

Thus, as with *Schmerber*, the analysis is not that complex. Was it reasonable, based on the facts known to the officer, to believe that the time it would take to obtain

---

[33] *McNeely*, 133 S. Ct. at 1561-63.

[34] *See* argument, p. 14.

[35] *McNeely*, 133 S. Ct. at 1564 n.7 (citations omitted).

11

a warrant would result in "the destruction of evidence"? Although elimination is not the only fact to be considered, it appears clear that any significant delay due to the unavailability of a magistrate—taking into account available technology—will result in a loss of evidence and make a warrantless blood draw reasonable. This delay should be considered in light of the time that has already elapsed between the apparent consumption of alcohol and the point at which an intoxication-based arrest was made.

It is also why exigency is still the rule in most jurisdictions rather than the exception. Yes, "some delay between the time of the arrest or accident and the time of the test is inevitable regardless of whether police officers are required to obtain a warrant[,]" and this reality undermines the argument for "a categorical exception to the warrant requirement because BAC evidence 'is actively being destroyed with every minute that passes.'"[36] And, of course, there might be "situation[s] in which the warrant process will not *significantly* increase the delay before the blood test is conducted."[37] But "exigent circumstances justifying a warrantless blood sample may arise *in the regular course of law enforcement* due to delays from the warrant

---

[36]   *Id*. at 1561.

[37]   *Id*. (emphasis added).

12

application process."[38]  "[T]he fact that a particular drunk-driving stop is 'routine' in the sense that it does not involve 'special facts,' such as the need for the police to attend to a car accident, does not mean a warrant is required."[39]  "Other factors present in an ordinary traffic stop, such as the procedures in place for obtaining a warrant or the availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search."[40]

Application

Appellant relies on the same "gradual and predictable" and "now or never" language that the Supreme Court warned was not the sum of the analysis.[41]  Again, the question is not whether, in hindsight, it might not have taken any longer to obtain a warrant than it took for a warrantless search or seizure.  Nor is it whether a warrant could have been obtained; obtaining a warrant is rarely an impossibility and is often done "easily."[42]  Rather, the question is whether a reasonable officer would have

_____

[38]  *Id*. at 1563 (emphasis added).

[39]  *Id*. at 1568 (citations omitted).

[40]  *Id*. (citations omitted).  Again, it is the "*anticipated* delays in obtaining a warrant" that justify the officer's belief, not the actual delays in hindsight.  *Id*. (emphasis added).

[41]  App. Br. at 21-22.

[42]  App. Br. at 23.

believed that the warrant process, easy or not, would produce an unacceptable delay under the circumstances. The undisputed, basic circumstances surrounding blood warrants in Williamson County satisfy this test under *Schmerber* and *McNeely*.

As *McNeely* acknowledged, "improvements in communications technology do not guarantee that a magistrate judge will be available when an officer needs a warrant after making a late-night arrest."[43] That is the case here, as there was no magistrate at the jail that night[44] and no technological developments like video conferencing in this jurisdiction.[45] As a result, it takes at least two hours to get a warrant signed after hours in Williamson County.[46] This is the same delay deemed reasonable in *Schmerber*. The result should be the same in this case.

Even if it would have been reasonable to commit to a two hour delay had this

---

[43]   133 S. Ct. at 1562.

[44]   5 RR 53.

[45]   *McNeely*, 133 S. Ct. at 1562. Even the technological tools for obtaining a warrant the old-fashioned way are somewhat lacking. For example, there is a patrol room near the booking desk with computers containing forms that one can prepare for a judge, but "some of the computers are fairly old" and printers may not be set up for them. 5 RR 89. "[I]t's a headache." 5 RR 89. Additionally, until the Legislature amends or supplements TEX. CODE CRIM. PROC. article 18.01(b) to specifically and comprehensively regulate the process of obtaining search warrants by telephonic or other electronic means, "the question of whether the circumstances of an individual telephonic warrant application will suffice to satisfy the solemnizing function of the oath requirement under Article 18.01(b) will have to be resolved on a case-by-case basis." *Clay v. State*, 391 S.W.3d 94, 103-04 (Tex. Crim. App. 2013).

[46]   5 RR 56; 7 RR 67 (2 to 3 hours in an emergency).

14

been a typical 15-20 minute DWI traffic stop,[47] this was far from the typical case.

The facts available to Detective Waldon leading up to contact with appellant were as follows:

- The 911 call put the hit-and-run at around 9:30 or 9:45 p.m.[48]

- Waldon arrived at the scene at 10:05, having no reason to suspect DWI and following protocol for a hit-and-run.[49]

- Investigation led to appellant's house, where Waldon arrived at 10:14 still believing this was a traffic matter.[50]

- When Ferrell, appellant's girlfriend, answered the door, she appeared upset and said appellant had a gun.[51]

The mention of a firearm immediately changed the nature of the situation.[52]

The situation was defused quickly and appellant came from the back of the house, albeit without a firearm.[53] Deputy Hammett proceeded to "clear" the residence of firearms and people "[t]he second Detective Waldon placed the subject in

---

[47]   7 RR 88-89, 94.

[48]    6 RR 176; State's 1 (CAD report); 5 RR 67. *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (information known to dispatcher is imputed to officer on the scene).

[49]   5 RR 20-21; 6 RR 175, 178.

[50]   6 RR 206, 244.

[51]   5 RR 23; 6 RR 146, 185.

[52]   5 RR 72.

[53]   5 RR 27; 6 RR 190-91.

15

handcuffs[,]"[54] which was by 10:16.[55] Waldon remained inside with appellant, who had a cut across his nose.[56] At some point, appellant told Waldon to just take him to jail, but Waldon told him he did not know what he would be going for yet.[57] After Ferrell came back in, she and appellant began "a little bit of back and forth" after she said appellant fell and he said she hit him.[58] That, combined with the weapon and the cut across appellant's nose, led Waldon to take appellant outside to separate them on suspicion of a "family violence situation."[59]

Meanwhile, Hammett grew concerned when the first sweep of the house did not reveal any weapons, so Ferrell guided him to them.[60] After securing the weapons, the investigation "had gotten so broad that [Hammett] didn't have a clear understanding of what [they] were investigating."[61] It was "dramatically different"

---

[54]     7 RR 82.

[55]     5 RR 29; 6 RR 246.

[56]     6 RR 192-93, 195.

[57]     6 RR 205.

[58]     5 RR 41; 6 RR 195, 203.

[59]     6 RR 195-96, 203.

[60]     7 RR 82-83.

[61]     7 RR 83.

from the way a DWI usually investigation unfolds.[62]

Once Waldon was able to speak with appellant, he believed appellant appeared intoxicated.[63] Appellant admitted he "hit that truck."[64] Waldon *Mirandized* him because "it seemed more than likely that [appellant] would be arrested at that point."[65] Waldon could not release appellant's hands to perform SFSTs at the scene due to officer safety.[66] Appellant was placed in a patrol car at 10:26 because it was secure, allowing Waldon to finish sorting out the scene.[67] Waldon was unsure of the offenses for which he could arrest appellant without a warrant,[68] but DWI and family violence were two options.[69] He spoke with Ferrell for 10 to 15 minutes and took pictures of

---

[62]  7 RR 83-84.

[63]  5 RR 33; 6 RR 202.

[64]  6 RR 204.

[65]  6 RR 204, 206.

[66]  6 RR 216-17; 7 RR 35, 95-96.

[67]  6 RR 205, 249.

[68]  7 RR 20-21.

[69]  In this case, he could have arrested appellant without a warrant for driving while intoxicated under TEX. CODE CRIM. PROC. art 14.03(a)(1) because it is a breach of the peace and appellant's home would be a suspicious place under the circumstances. *Gallups v. State*, 151 S.W.3d 196, 201-02 (Tex. Crim. App. 2004). Appellant also could have been arrested without a warrant on probable cause of family violence. TEX. CODE CRIM. PROC. art 14.03(a)(4). Both offenses were raised by the rapidly unfolding circumstance.

appellant's truck.[70]  By 10:58, appellant was en route to the jail.[71]

If the two hours it would have taken to obtain a warrant that night once a DWI arrest was made did not present an exigency, the additional time attributable entirely to appellant did.  Assume the accident took place at 9:45.  If appellant remains at the scene, the 911 call is made almost immediately and Waldon gets there within minutes to make an uneventful DWI arrest.  If appellant never grabs a gun, Waldon makes an uneventful DWI arrest at his house 30 minutes after the accident.  Instead, Waldon could not even perform SFSTs because of the danger posed by an unrestrained, intoxicated man with possible access to firearms.  Appellant's allegation that Ferrell hit him further extended the investigation into domestic violence.  All told, there is an additional hour delay created entirely by appellant's actions.  Any reasonable officer would conclude that a three-hour delay between the intoxicated driving and a blood draw would risk the destruction of too much reliable, probative evidence.[72]

Appellant's arguments look at the circumstances in piecemeal fashion instead

---

[70]   7 RR 22-23.

[71]   6 RR 215.

[72]   Waldon agreed that defendants are sobering up the entire time a warrant is being sought, 7 RR 63, and the DPS analyst explained the diminished utility of retrograde extrapolation.  5 RR 168-70.  A reasonable officer would also assume that the drinking took place before the driving while intoxicated, adding an unknown amount of time to the dissipation of alcohol.  In this case, the receipt from the restaurant found during processing shows the tab was closed at 8:11.  5 RR 95; 6 RR 219; 7 RR 39; State's Ex. 8 (admitted 6 RR 40).

of collectively. It is true that accident investigation, without more, does not create exigent circumstances.[73] The key phrase is "without more." It cannot be overstated that this was not even close to a typical accident investigation. The "more" in this case is flight from the scene, the threat of a firearm, and reasonable suspicion of domestic violence. Appellant also argues that there was "clearly" no exigency caused by the threat of a firearm because that particular threat was ended in 12 minutes.[74] But this 12-minute delay did not occur in a vacuum. The fact that precipitated the protective sweep—an upset woman telling police someone inside had a gun—cast a shadow over everything that took place afterwards.

Appellant also states that the number of available officers cuts against exigency because any one of them could have obtained a warrant, especially after 11:00 p.m.[75] But the circumstances created by appellant made Waldon the only officer with the knowledge to get a warrant. Because of the gun, Waldon was the only officer to speak with appellant at his house. Waldon observed appellant's appearance and heard his admission to hitting the truck. Moreover, no other officer could arrest appellant for DWI without investigating to establish the house was a suspicious

---

[73] App. Br. at 23 (citing *Douds*, 434 S.W.3d at 854).

[74] App. Br. at 23.

[75] App. Br. at 23.

19

place.[76] So the number of officers who could have driven away with appellant for DWI was irrelevant. A warrantless arrest could have been made for family violence, but that required further investigation. Again, Waldon was in the best position to continue that investigation: Ferrell made her alarming statement to him, and he was the witness to their "back and forth." Although the presence of a third officer allowed Waldon to leave appellant in another officer's vehicle to briefly interview Ferrell once the house was cleared, that officer could do nothing until that investigation was complete. The number of other officers in the county, or even on the scene, is irrelevant under these facts.

There are post-*McNeely* cases in which the record did not show an exigency, but they are all distinguishable.[77] None come close to the unique facts presented in

---

[76] Appellant made this an issue at trial through his questioning of Waldon and his request for a jury instruction. 7 RR 20-21, 8 RR 9, 17-18; 1 CR 117.

[77] *See Leal v. State*, 452 S.W.3d 14, 19, 24 (Tex. App.–Houston [14th Dist.] 2014, pet. filed, remanded Mar. 25, 2015, for consideration of preservation of Fourth Amendment argument) (near collision between suspect and officer immediately resulted in a DWI investigation and there was "no evidence regarding what [the officer] knew about the time needed to obtain a warrant"); *Evans v. State*, 14-13-00642-CR, 2015 Tex. App. LEXIS 1237 at *17 (Tex. App.–Houston [14th Dist.] Feb. 10, 2015) (motion for rehearing filed Feb. 24, 2015) (not designated for publication) ("the record reflects that Trooper Robinson believed he had time to secure a warrant"); *Bowman v. State*, 05-13-01349-CR, 2015 Tex. App. LEXIS 1285 at *35 (Tex. App.–Dallas Feb. 10, 2015) (motion for rehearing filed Feb.25, 2015) (not designated for publication) ("The record shows Hoya had access to technology that enabled him to prepare a warrant application remotely using a form document."); *State v. Anderson*, 445 S.W.3d 895, 911 (Tex. App.–Beaumont 2014, no pet.) ("Indeed, the evidence at the suppression hearing indicates that there was a judge available and on stand-by, that there were other law enforcement officers and two assistant district attorneys on the scene, as well as attorneys and staff at the courthouse who were available."); *Forsyth v. State*, 438 S.W.3d

(continued...)

20

this case.

<u>The overwhelming evidence and appellant's trial strategy rendered any error harmless</u>

Should the Court of Criminal Appeals affirm its opinion in *Villarreal* and this Court find that exigent circumstances did not exist, the error in admitting the BAC was harmless beyond a reasonable doubt.[78] Viable considerations in determining harm under Rule 44.2(a) include "the nature of the error (*e.g.*, erroneous admission or exclusion of evidence, objectionable jury argument, etc.), whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations."[79] "But they are not exclusive considerations in any particular case; many other considerations may logically serve to inform a proper harm analysis in a given case."[80] "While the most significant concern must be the error and its effects, the presence of

---

[77](...continued)
216, 219 (Tex. App.–Eastland 2014, pet. ref'd) ("the trial court found that Officer McDaniel did not make an attempt to obtain a warrant even though the officer was aware that there were magistrates available twenty-four hours a day at the central booking facility located about the same distance away from the stop as the hospital."); *Sutherland v. State*, 436 S.W.3d 28, 40-41 (Tex. App.–Amarillo 2014, pet. filed) ("A magistrate is available twenty-four hours a day, every day. . . . Likewise, a phlebotomist is always available, either mere feet down the hall from the magistrate on at least five days of the week or on call at any other time."); *Douds*, 434 S.W.3d at 855 (there was "nothing whatsoever in the record regarding what Officer Tran knew about the time needed to obtain a warrant").

[78]   *See* TEX. R. APP. P. 44.2(a).

[79]   *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

[80]   *Id*.

overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error."[81] "Stated in an interrogatory context, a reviewing court asks if there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question."[82]

In this case, there is no reasonable probability that the erroneous admission of BAC evidence "moved the jury from a state of nonpersuasion to one of persuasion." The jury was charged with both theories of intoxication,[83] and there was overwhelming evidence of appellant's drunkenness. Appellant drank approximately seven 22 oz. beers between 5:00 or 5:30[84] and when the waitress noticed he was falling asleep, yanked his beer, and started serving him rolls and water.[85] She was concerned about him and asked his friend, whom she knew, to text her when appellant got home.[86] She was right to be worried; appellant hit a parked truck going

---

[81] *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (citations omitted).

[82] *Id*. (citations omitted).

[83] 1 CR 96-97. Unlike prosecution under TEX. PENAL CODE § 49.04(d), the actual BAC was not an element of the offense.

[84] 6 RR 53-54, 70, 73.

[85] 6 RR 55-56.

[86] 6 RR 59, 75.

less than 10 miles per hour[87] on his own street. He fled, which is evidence of consciousness of guilt.[88] When he got home, he was argumentative with his wife, told her he did not want to go to jail, and grabbed a gun.[89] Appellant fell and cut his nose because he could not keep his balance.[90] Detective Waldon described his slow, slurred speech, his glassy eyes, the odor of alcohol, and his unsteady and lethargic nature.[91] Appellant eventually refused SFSTs, which is also evidence of guilt.[92]

Although the State mentioned the BAC in its closing arguments,[93] it spent the vast majority of its time on appellant's obvious impairment. Its rebuttal was especially forceful. The prosecutor recounted the ways in which appellant's actions evinced loss of mental faculties: the math mistake on the restaurant bill, the poor judgment exercised in driving despite having a ride available, his apparent suicidal thoughts, being argumentative with his wife, his lack of responsiveness to police

---

[87]   6 RR 86.

[88]   *Clayton v. State*, 235 S.W.3d 772, 781 (Tex. Crim. App. 2007).

[89]   6 RR 140-41.

[90]   6 RR 195, 202.

[91]   6 RR 202.

[92]   *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) ("Evidence of the appellant's refusal to submit to a breath test is relevant for precisely the reason that the trial court identified in the contested jury instruction, namely, that it tends to show a consciousness of guilt on his part.").

[93]   8 RR 51-52, 57, 82-83.

commands, and his inability to answer questions consistently.[94]  "And really, we could stop here, and I could ask you to find him guilty beyond a reasonable doubt because I don't have to show that he lost his physical faculties or that he was .08 or more."[95]

But she showed them anyway: appellant was slumped over at the restaurant, he drove into a parked vehicle, he fell over and cut his nose, he had trouble standing, he had slurred speech and glassy eyes, and he was lethargic.[96]  She briefly mentioned the BAC and defended its results,[97] but then went back to how "[e]veryone that (sic) came in contact with the defendant that night said he was intoxicated[,]" including his friend, a waitress with no interest in the outcome of the case, and his girlfriend.[98] She recounted the sheer volume of alcohol he drank, and reminded the jury that his words and actions after the accident show a cover up.[99]  Finally, she established the time line to show that he was intoxicated at the time of the accident.[100]

---

[94]   8 RR 78-80.

[95]   8 RR 80.

[96]   8 RR 81-82.

[97]   8 RR 82-83.

[98]   8 RR 83-84.

[99]   8 RR 84-85.

[100]   8 RR 85-86.

Not only did defense counsel not contest appellant's intoxication, they argued that BAC was irrelevant. "[T]he key this case," the defense argued, was the "wide open" "window" between the time appellant closed out his tab and when 911 was called.[101] "The reason that's so important, and something y'all should focus on when you're talking in the back, is because that is the opportunity that [appellant] had to go home and drink."[102] He then described the absence of direct evidence on what he called "this extended period of time when [appellant] is home drinking beer."[103] "And . . . the reason that that's so terribly important in this case, is it means that the blood evidence . . . is meaningless."[104] He argued that the lack of evidence establishing the timing of appellant's drinking made Waldon's observations irrelevant, as well.[105] Defense counsel questioned the value of the testimony of appellant's friend and the waitress, and cast vague aspersions at the quality of investigation and DPS's procedures,[106] but never strayed far from his argument that "the blood is really not a portion of the evidence . . . that you should really consider because it happened after

---

[101]    8 RR 59.

[102]    8 RR 59.

[103]    8 RR 60-62.

[104]    8 RR 62.

[105]    8 RR 63.

[106]    8 RR 64-69.

25

he drank [at home]."[107] "[A]gain, to reiterate the focus that we ask you to have in this case, is focus on that window. Focus on that period of time when [appellant] was drinking at home."[108]

Defense co-counsel continued that line of argument.[109] "You don't even know the time he was driving; how could you know whether he was intoxicated at the time of driving?"[110] He then explained at length how reasonable it was for someone in appellant's position, and with his history, to get home and then get drunk.[111]

Conclusion

Regardless of whether section 724.012(b) constitutionally authorized the warrantless blood draw, the facts of this case present an exigency that made it reasonable. And, as it turns out, the BAC was unnecessary because the evidence of appellant's intoxication was not only overwhelming but undisputed, as his strategy was to attack its timing instead. This point of error should be overruled.

---

[107] 8 RR 67.

[108] 8 RR 69.

[109] 8 RR 71-72.

[110] 8 RR 72.

[111] 8 RR 73-75.

**Response to Issue 2: There was no disputed issue of fact for the jury to decide**

Article 38.23 requires a trial court to instruct the jury that it shall disregard any evidence obtained in violation of the law. But this requirement arises only when there is a disputed issue of material fact, and appellant did not present one.[112]

Law

In any case where the legal evidence raises an issue as to whether evidence was obtained in violation of the law, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was so obtained it shall disregard it.[113] There are three requirements.

First, the issue raised must be one of fact.[114] This requirement is based both on law and practicality. "The jury decides facts; the judge decides the application of the law to those facts."[115] Moreover, the standards used to determine Fourth Amendment questions are "fluid concepts that take their substantive content from the particular

---

[112] As a threshold matter, the existence of a warrant or exigent circumstances is material only if the statutory blood draw was unconstitutional and the exclusionary remedy applies.

[113] TEX. CODE CRIM. PROC. art. 38.23(a).

[114] *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

[115] *Id*. at 511 (citing TEX. CODE CRIM. PROC. art. 36.13 ("Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby.")).

contexts in which the standards are being assessed."[116]  "The jury, however, is not an expert on legal terms of art or the vagaries of the Fourth Amendment[,]" and asking them to determine probable cause or exigent circumstances "would require a lengthy course on Fourth Amendment law."[117]

Second, the evidence on that fact must be affirmatively contested.  Where the issue raised by the evidence at trial does not involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court as a question of law.[118]  Such is the case with Fourth Amendment rulings on undisputed facts.[119]

Third, the disputed fact must be "material," *i.e.*, "an essential one in deciding the lawfulness of the challenged conduct."[120]  "[I]f other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate

[116]   *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

[117]   *Madden*, 242 S.W.3d at 511.

[118]   *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012); *Madden*, 242 S.W.3d at 510.

[119]   *See*, *e.g.*, *Mills v. State*, 296 S.W.3d 843, 845 (Tex. App.–Austin 2009, pet. ref'd) ("Whether reasonable suspicion is present is a question of law for the trial court when there is no dispute concerning the existence of the underlying historical facts from which that determination is made."); *Douds*, 434 S.W.3d at 855 ("Whether those facts meet the legal standard of exigent circumstances is a legal question that we review *de novo*.").

[120]   *Madden*, 242 S.W.3d at 510-11.

admissibility of the evidence."[121]

Application

Appellant asked the trial court to submit the following instruction:

> If you believe, or have a reasonable doubt thereof, that the Defendant's blood was drawn without a warrant or exigent circumstances then you shall disregard any evidence obtained as a result of that blood draw.[122]

This question presents no disputed issues of fact for the jury to consider. "It is undisputed that Appellant refused consent to the blood draw and that a warrant was not obtained in this case."[123]  Likewise, appellant makes no argument that any other facts are in dispute.  Rather, his argument that there were no exigent circumstances is based entirely on the facts as told by the officers involved and the testimony of present and former prosecutors, which was consistent.[124]  The chronology, explanation for any delays, reasons for the officers' actions, and the time it would have taken to obtain a warrant are virtually undisputed.  The requested instruction is what it appears to be—a request for the jury to make a legal determination based on

---

[121]  *Id*. at 510.

[122]  1 CR 117 (Instruction (4)).

[123]  App. Br. at 14.

[124]  App. Br. at 22-26.

undisputed facts.[125] This is not permitted.

Conclusion

Appellant was not entitled to his requested question because he did not seek the resolution of a disputed factual issue. The trial court was correct, and this point of error should be overruled.

**Response to Issue 3:** **The *Ex Post Facto* Clause does not apply to enhancement provisions like 49.09**

In his final point of error, appellant argues that the use of his prior DWI convictions to increase his punishment was impermissible because of the version of section 49.09 in effect at the time of those convictions.[126] Section 49.09 is not, nor has it ever been, a substantive offense or a promise that any convictions would not be used for any purpose in the future. As such, the *Ex Post Facto* Clause is inapplicable.

The *Ex Post Facto* Clause prohibits four types of laws:

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed.

[125] *Cf. Madden*, 242 S.W.3d at 512 ("What appellant wanted was a jury instruction on whether the totality of facts that Officer Lily listed constituted 'reasonable suspicion' under the Fourth Amendment."); *White v. State*, 201 S.W.3d 233, 248-49 (Tex. App.–Fort Worth 2006, pet. ref'd) ("There was no dispute, however, as to the facts upon which the exigent circumstances were determined.").

[126] TEX. PENAL CODE § 49.09.

3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.[127]

"[T]he plain and obvious meaning and intention of the prohibition is this; that the Legislatures of the several states, shall not pass laws, after a fact done by a subject, or citizen, which shall have relation to such fact, and shall punish him for having done it."[128]

Application

Appellant is apparently relying on the fourth prohibition.[129] Regardless of the prohibition upon which he relies, a subsequent change in applicable enhancement provisions is not an *ex post facto* violation. "Both the United States Supreme Court and [the Court of Criminal Appeals] have addressed the issue of prior crimes used to

---

[127] *Carmell v. Texas*, 529 U.S. 513, 522 (2000) (quoting *Calder v. Bull*, 3 U.S. 386, 390, 1 L. Ed. 648 (1798)). Appellant's complaint is based on the Texas Constitution. The Court of Criminal Appeals has adopted the Supreme Court's definition of "*ex post facto*" in interpreting the same term found in Article I, Section 16 of the Texas Constitution, *Grimes v. State*, 807 S.W.2d 582, 586 (Tex. Crim. App. 1991), but has more recently only assumed both clauses are coextensive. *Scott v. State*, 55 S.W.3d 593, 595 n.2 (Tex. Crim. App. 2001). Because appellant "points to nothing unique in Texas history, law, or jurisprudence which would require, or even suggest a basis for, Texas courts to deviate from Supreme Court precedent on this issue[,]" *Cobb v. State*, 85 S.W.3d 258, 267 (Tex. Crim. App. 2002), they will be treated interchangeably.

[128] *Calder*, 3 U.S. at 390.

[129] App. Br. at 30 (citing only the fourth), 32 ("There is certainly a difference in the proof required between the first statute and the second.").

enhance punishment and have declined to find an *ex post facto* violation."[130] "The allegation of previous convictions is not a distinct charge of crimes, but . . . goes to the punishment only. The statute, imposing a punishment on none but future crimes, is not *ex post facto*."[131]

Not only has this broad issue been decided against appellant, numerous courts of appeals have rejected an identical claim.[132] In fact, this Court has four times held that changes to the DWI enhancement provision that affect the availability of prior convictions for enhancement purposes in the future do not violate the constitutional prohibition on *ex post facto* laws.[133] And, although appellant does not cite *Scott* or analogize the version of 49.09 in effect at the time of his convictions to "the existence in the prior statute of an explicit limitation on the collateral consequences of deferred

---

[130]   *Scott*, 55 S.W.3d at 597 (citing *McDonald v. Massachusetts*, 180 U.S. 311 (1901), and *Shaw v. State*, 529 S.W.2d 75, 76 (Tex. Crim. App. 1975)).

[131]   *McDonald*, 180 U.S. at 313.

[132]   *Conelly v. State*, 451 S.W.3d 471, 478 (Tex. App.–Houston [1st Dist.] 2014, no pet.) (collecting cases from seven other courts).

[133]   *Bailey v. State*, 03-09-00276-CR, 2010 Tex. App. LEXIS 4584 at *18 (Tex. App.–Austin June 18, 2010, pet. ref'd) (not designated for publication); *see also Castillo v. State*, 03-07-00546-CR, 2008 Tex. App. LEXIS 6225 at *2 (Tex. App.–Austin Aug. 14, 2008, no pet.) (not designated for publication); *Townsend v. State*, 03-05-00766-CR, 2007 Tex. App. LEXIS 5940 at *1-2 (Tex. App.–Austin July 26, 2007, pet. ref'd) (not designated for publication); *Saucedo v. State*, 03-06-00305-CR, 2007 Tex. App. LEXIS 4292 at *10 (Tex. App.–Austin May 30, 2007, no pet.) (not designated for publication).

adjudication[,]"[134] this Court has made it clear that the ten-year time limitation on the use of prior DWI convictions in the previous version of section 49.09 was not an explicit guarantee that those convictions could not be used in the future, but only a restriction on what prior convictions could be used to enhance a DWI offense at that time.[135]

Conclusion

As this Court has already held, nothing about the use of an enhancement scheme in place at the time of the commission of a new offense makes the use of prior convictions an *ex post facto* violation. This point of error should be overruled.

**PRAYER FOR RELIEF**

The State of Texas prays that appellant's conviction be affirmed.

Respectfully submitted,

   /s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705
P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

---

[134] *See Scott*, 55 S.W.3d at 597.

[135] *Bailey*, 2010 Tex. App. LEXIS 4584 at *18; *Castillo*, 2008 Tex. App. LEXIS 6225 at *2; *Saucedo*, 2007 Tex. App. LEXIS 4292 at *10.

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool this document contains 9,242 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of April, 2015, the State's Supplemental Brief on the Merits has been e-filed with the Court and served electronically to the following:

Lauren McLeod
Assistant District Attorney
Williamson County District Attorney's Office
405 M.L.K. Street, Suite 265
Georgetown, Texas 78626
lmcleod@wilco.org

Kristen Jernigan
Attorney at Law
207 S. Austin Ave.
Georgetown, Texas 78626
Kristen@txcrimapp.com

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney