**Opinion issued October 30, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00398-CR

———————————

**TYRONE GAYNELL CONELLY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 7**
**Harris County, Texas**
**Trial Court Case No. 1765756**

---

## O P I N I O N

A jury found appellant, Tyrone Gaynel Conelly, guilty of driving while intoxicated [DWI], and, after appellant pleaded true to a DWI enhancement, the trial court assessed punishment at 180 days' confinement. In three points of error,

appellant contends that (1) the evidence was legally insufficient to show that he operated a motor vehicle; (2) the trial court erred in admitting his booking photo, which he claims was unduly prejudicial; and (3) the use of a 1985 conviction for enhancement purposes violated constitutional prohibitions against *ex post facto* laws. We affirm.

## BACKGROUND

On the night of June 26, 2011, Corporol N. Yeley, of the Clear Lake Shores Police Department, was off duty and heading home from a family trip when he saw a red SUV driving erratically. Yeley called 911 and followed the vehicle as it left the freeway. According to Yeley, the vehicle was "moving from lane to lane," had a turn signal flashing "for a long period of time," and "almost struck the barricades a couple of times but maintained a slight distance away from them." Yeley was in a civilian vehicle, so he turned on his hazard lights to alert the police to the location of the vehicle when they arrived.

A police car arrived and pulled over the vehicle. Yeley remained in his car while the vehicle that he had seen being driven erratically was stopped. Yeley remained at the scene so that he could assist if there a problem. Yeley saw that the SUV had only one occupant, who he described as "an older, skinny guy with roughed up hair." Yeley approached the scene and spoke with the deputies before leaving the scene.

Deputy Gerrish, a deputy constable for Precinct 8 in Harris County, was working patrol on June 26, 2011, when he was called to service for a possible intoxicated driver. His supervisor, who was in another car, saw the vehicle first and pulled the driver over. Gerrish arrived shortly thereafter. When he arrived, appellant was in the driver's seat of the vehicle and there were no passengers. Gerrish approached appellant and asked him if he had ingested any narcotics. According to Gerrish, appellant responded that he had been on a "multiple-day bender of cocaine" and he had a "70-dollar-a-day addiction." Gerrish noticed that appellant had body tremors, and was constantly moving, and that the muscles on his face seemed to contract into involuntary smiles. He also noticed that appellant's pupils were very small.

Gerrish decided to administer the standard field sobriety tests in order to evaluate appellant's possible impairment. According to Gerrish, appellant was unable to perform the HGN test because he was unable to control his eyes and head independently, and he failed both the walk-and-turn test and the one-leg-stand test.

Due to appellant's poor performance on the field sobriety tests, Gerrish placed appellant under arrest, called a drug recognition expert to the scene, and conducted a search of appellant's vehicle incident to arrest. In appellant's vehicle, Gerrish found a crack pipe with residue, some steel wool commonly used as a filter for smoking crack, some syringe caps, and a small gauge needle.

Deputy Michael Ford, also a deputy constable with Harris County Precinct 8, responded to Officer Gerrish's request for a drug recognition examination ["DRE"]. In performing the DRE there are seven categories of drugs that are subject to recognition: central nervous system depressants, central nervous system stimulants, hallucinogens, dissociative anesthetics, narcotic analgesics, inhalants, and marijuana. Ford inquired about Gerrish's observations during the standardized field sobriety tests. He also performed a breath test. Because appellant's breath alcohol concentration was 0.0010, Ford ruled out alcohol, but because of Gerrish's observations, Ford believed that appellant was under the influence of a narcotic or some other substance.

Ford observed that appellant's "eyes were bloodshot and glassy; he spoke with a slurred, quick manner; his actions were quick; he had difficulty sitting still; he would go from restless to passed out, drowsiness and falling asleep." Appellant informed Ford that he had not slept in over 48 hours. Ford conducted a psychophysical evaluation including four exercises: (1) the Romberg Balance test, which helps determine the pace of the individual's internal clock; (2) the walk-and-turn test; (3) the one-leg-stand test; and (4) the finger-to-nose test. Appellant was able to perform the Romberg test without difficulty, but Ford described his performance on the final three tests as "poor."

4

After completing the psychophysical tests, Ford checked appellant's vital signs. Appellant had high blood pressure, but his pupils were within normal range. Ford observed track marks on appellant's arms and noticed that his muscle tone was rigid, indicating a stimulant had been ingested. Ford questioned appellant about his drug use. Appellant admitted to using cocaine and agreed to provide a urine sample. Ford opined that appellant was impaired by a central nervous system stimulant and as a result he was not able to safely operate a vehicle at the time of his arrest. He also noted that cocaine, which appellant had admitting ingesting, is a central nervous system stimulant. Ford did not see appellant operate the vehicle and, at the time of his arrest, the vehicle was inoperable because it was out of gas.

Dr. Jeff Walterschied, the assistant chief toxicologist at the Harris County Institute of Forensic Sciences analyzed the urine sample provided by appellant and found that he had an active cocaine metabolite, ethanol, and the inactive metabolite of THC in his system. Walterschield opined that the presence of the active cocaine metabolite indicated the drug was still in appellant's system, but he could not determine when the drug might have been ingested or whether the amount indicated would actually cause intoxication.

**SUFFICIENCY OF THE EVIDENCE**

In his first point of error, appellant contends that "[t]he evidence was legally insufficient to sustain the conviction for driving while intoxicated because there

was no evidence to support the 'operating a motor vehicle' element of the charged offense." *See* TEX. PENAL CODE ANN. § 49.04 (Vernon Supp. 2014) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.").

*Standard of Review*

This Court reviews legal and factual sufficiency challenges using the same standard of review. *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893, 912, 926 (Tex. Crim. App. 2010)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11; *Laster*, 275

6

S.W.3d at 518; *Williams*, 235 S.W.3d at 750. Additionally, the evidence is insufficient as a matter of law if the acts alleged do not constitute the criminal offense charged. *Williams*, 235 S.W.3d at 750.

An appellate court determines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). In viewing the record, direct and circumstantial evidence are treated equally. *Id.* at 13. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. An appellate court also defers to the factfinder's evaluation of the credibility and weight of the evidence. *See Williams*, 235 S.W.3d at 750

*Analysis*

Appellant contends that there is legally insufficient evidence identifying appellant as the operator of the SUV. Specifically, appellant argues that "Officer Yeley, the only eyewitness to the operation of the vehicle who testified at trial was not able to make an in-court identification of [appellant] as the driver[,]" and that "[n]either Officers Garrish, nor Ford [were] present when the vehicle was actually

7

in operation." The State responds that there was sufficient circumstantial evidence showing that appellant operated the vehicle. We agree with the State.

The identity of a perpetrator can be proved by direct or circumstantial evidence; eyewitness identification is not necessary. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Here, Yeley saw a single occupant in a red SUV driving erratically. He stayed behind the car, called 911, and maintained visual contact with the SUV until police arrived. Yeley saw the police get a man out of the car, and he never saw any other occupants. When Gerrish arrived, the red SUV was parked on the side of the road after having run out of gas. Appellant was seated behind the wheel, and there was no one else in the vehicle. When questioned, appellant said that he had been on a cocaine bender for several days, but he was headed home because he had run out of money. Based on this evidence, even though Yeley did not identify appellant at trial, the jury could have rationally concluded that the person Yeley saw driving the red SUV erratically was the same person Gerrish removed from the red SUV after it ran out of gas and identified as appellant.

Accordingly, we overrule point of error one.

# ADMISSION OF PHOTOGRAPH

In his second point of error, appellant contends "[t]he trial court abused its discretion in failing to exclude State's exhibit 4 [his booking photo] from the jury's consideration because the probative value was outweighed by the prejudicial effect."

*Standard of Review*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. The opponent of the evidence must demonstrate that its negative attributes substantially outweigh any probative value. *Montgomery*, 810 S.W.2d at 377. A rule 403 analysis must balance (1) the inherent probative force of the proffered item of evidence, along with (2) the proponent's need for that evidence, against (3) any tendency of the

evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

*Analysis*

Appellant argues that his booking photo was unduly prejudicial because in it appellant "looks tired and disheveled," and the photograph was not necessary to prove appellant's identity because the State had already introduced a video from appellant's arrest. The photograph, which was taken at the police station shortly after appellant was arrested, was introduced by the State to rebut appellant's defensive theory that he was not the person Yeley had seen erratically driving the red SUV. Since the evidence was presented to rebut a defensive theory of appellant's, the evidence was strongly probative.

The State needed the evidence because the photograph demonstrated appellant's appearance only a few hours after the offense was committed and matches Yeley's description of "an older, skinny guy with roughed up hair." The

photograph is a better representation of appellant's appearance than the roadside video, which was taken at night and from a further distance.

The photograph does not suggest a decision on an improper basis because, even if the photo suggests that appellant was arrested, that fact was obviously already known to the jury. *See Hajjar v. State*, 176 S.W.3d 554, 561–62 (Tex. App.—Houston [1st Dist.], pet. ref'd) (noting that "[a]s a juror in a criminal trial, one already knows that the defendant has gone through the process of being booked and charged with a crime"). In fact, arguably the photo supports appellant's testimony that he was driving erratically because he was sleepy, not intoxicated.

There is nothing to suggest that the photograph would confuse or distract the jury, or that a jury would place undue weight on the photograph, which, while perhaps unflattering as booking photos tend to be, does nothing more than portray the way appellant appeared shortly after his arrest.

Finally, the presentation of the photograph did not take an inordinate amount of time even if it was somewhat duplicative of the video, which also portrayed appellant's appearance on the night of his arrest.

Rule 403 favors the admission of relevant evidence and carries with it a presumption that probative evidence will be more probative than prejudicial. *See Long v. State*, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991). Appellant has not

11

overcome that presumption here; thus the trial court did not abuse its discretion by admitting appellant's booking photograph.

Accordingly, we overrule point of error two.

## *EX POST FACTO* LAW

Earlier versions of the DWI statute provided that a prior conviction for DWI could not be used for enhancement if the conviction was more than ten years old. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3698; see also Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 21, 1995 Tex. Gen. Laws 2734, 2743. In 2005, the Legislature eliminated the ten-year requirement, effective September 1, 2005. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 996, § 3, 2005 Tex. Gen. Laws 3363, 3364; *see also* TEX. PEN. CODE ANN. § 49.09(a) (Vernon Supp. 2014). In his third point of error, appellant contends that "[a]pplication of the 2005 Amendment of the DWI statute in [appellant's] case violates the proscription against Ex Post Facto laws under both the United States and Texas Constitutions." Specifically, he contends that his 1985 DWI conviction was more than 10 years old at the time of trial and should not have been used to enhance the level of the charged offense.

*Applicable Law and Analysis*

An *ex post facto* law: (1) punishes as a crime an act previously committed which was innocent when done; (2) changes the punishment and inflicts a greater

punishment than the law attached to a criminal offense when committed; or (3) deprives a person charged with a crime of any defense available at the time the act was committed. *Rodriguez v. State*, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002). Appellant argues that the 2005 amendment constitutes an *ex post facto* law because it eliminated the ten-year requirement for enhancements.

However, we agree with the reasoning of the Fourteenth Court of Appeals, which addressed this issue by stating:

> We hold that the [ten-year rule] was not an explicit guarantee that . . . convictions could not be used in the future, but only a restriction on what prior convictions could be used to enhance an offense at the time. Therefore, the 2005 changes to the DWI enhancement statute, by removing all time limitations on the use of prior DWI convictions to enhance current DWI charges, did not increase [a defendant's] punishment . . . for prior convictions and therefore is not an *ex post facto* law.

*State v. Pieper*, 231 S.W.3d 9, 15 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Texas courts have consistently held that for purposes of enhancement, the use of prior convictions that could not have been used at the time they were originally committed is not a violation of the prohibition against *ex post facto* laws. *See Cohen v. State*, No. 10-08-00385-CR, 2010 WL 199887, at *2 n.2 (Tex. App.—Waco Jan. 20, 2010, no pet.) (mem. op., not designated for publication); *see also Engelbrecht v. State*, 294 S.W.3d 864, 868 (Tex. App.—Beaumont 2009, no pet.); *Sepeda v. State*, 280 S.W.3d 398, 402 (Tex. App.—Amarillo 2008, pet. ref'd); *Crocker v. State*, 260 S.W.3d 589, 592 (Tex. App.—Tyler 2008, no pet.);

*Pieper*, 231 S.W.3d at 14; *Saucedo v. State*, No. 03-06-00305-CR, 2007 WL 1573948, at *4 (Tex. App.—Austin May 30, 2007, no pet.) (mem. op., not designated for publication); *Romo v. State*, No. 04–05–00602–CR, 2006 WL 3496933, at *1–2 (Tex. App.—San Antonio Dec.6, 2006, no pet.) (mem. op., not designated for publication).

We agree with these cases finding no *ex post facto* violation because the "enhancement statues penalize the new criminal offense being enhanced rather than the prior offense used for enhancement[.]" *Pieper*, 231 S.W.3d at 12.

Accordingly, we overrule appellant's third point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Publish.   TEX. R. APP. P. 47.2(b).

14