**Opinion issued December 22, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-14-00894-CR

————————————

### JUAN CERDA ALVARADO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 240th District Court
### Fort Bend County, Texas
### Trial Court Case No. 11-DCR-058831

---

### MEMORANDUM OPINION

A jury convicted Juan Cerda Alvarado on one count of aggravated sexual

assault of an eight-year-old child, Joan,[1] and assessed punishment at 99 years'

---

[1] To protect the privacy of the complainant, we identify her by a pseudonym and identify her mother by her initials.

confinement. In two issues, Alvarado argues that the evidence was legally and factually insufficient to support the jury's verdict. We affirm.

## Background

F.B., the complainant's mother, was married to Alvarado. F.B., Alvarado, and F.B.'s children lived together. One evening, F.B. returned home from a party and saw shadows underneath the bathroom door while the shower was running. As she reached for the door, Alvarado, whose face, body, shirt, and pants were "all wet," came out of the bathroom. F.B. realized that her eight-year-old daughter, Joan, was still in the shower and asked Alvarado why he was in the bathroom at the same time as Joan and how he got wet. Alvarado replied that he "needed to use the bathroom" and "slipped" while in the bathroom. F.B. waited for Joan to finish showering, and after Joan left the bathroom, F.B. took her into her bedroom and asked her what had happened. As F.B. questioned Joan, Alvarado screamed outside the bedroom door, "Don't believe her. She's a liar. Nothing of what she says is true."

Joan initially hesitated when answering F.B.'s questions and gave conflicting answers. She first confirmed Alvarado's story and stated that he slipped while he was in the bathroom. After further questioning, however, Joan told F.B. that Alvarado put his "thing" in her. F.B. then left the house with Joan and her other children and went to the police the next day.

The police sent F.B. to meet with a detective, M. Escobedo, who directed her to a forensic interviewer, Mayra Domingue. Domingue interviewed Joan twice. During the second interview, Joan stated that Alvarado "pulled her out of the bathtub" while she was showering, got behind her, then "pulled out his weenie and put it in her butt" while pressing hard on her stomach with his hands. Using anatomically correct drawings of male and female figures, she identified a "weenie" as a penis and clarified that by "butt" she was referring to her buttocks and specifically to inside the crease. Joan said that she never saw Alvarado's "weenie" during the sexual encounter in the bathroom, but she felt something "sticking up" and felt something that was "squishy." She also described a similar encounter with Alvarado in the living room of the family home on a different occasion.

After listening to Joan's description of events during the second interview, Domingue sent Joan to the hospital for a medical examination to collect DNA evidence and look for signs of trauma or sexual abuse. Tiffany Dusang, a forensic nurse examiner, performed this examination. Joan described the sexual encounter in the bathroom with Alvarado to Dusang, as well as a similar instance in her family's living room when she was six years old. She told Dusang, "The part boys have where they urinate he put in my bottom where I poo poo, in the back. I was bleeding." She also told Dusang that she had experienced five to ten such sexual

3

encounters with Alvarado, starting when she was six. The medical exam, which occurred three days after the sexual encounter in the bathroom, revealed no physical signs of trauma or sexual abuse. According to the Dusang, the lack of physical trauma was not surprising because bruising and small tears in the anus heal rapidly in children.

At trial, the State presented testimony from F.B., Domingue, Joan, Escobedo, and Dusang. Joan testified that Alvarado put his "thing" that he uses to go "pee pee" in her back where the "poo" comes out and that it hurt her and made her feel weak. Joan testified that she called Alvarado "Dad" at the time that he lived with her and the rest of her family. She was initially unable to identify Alvarado in the courtroom, saying she did not remember what he looked like and that his skin was "negro" or "black." After further questioning, she was able to identify him as the defendant.

Alvarado did not present a case in chief. Instead, his attorney relied on cross examination of the State's witnesses and argued to the jury that Joan's account was unreliable and that, at most, the evidence supported a simple assault, rather than aggravated sexual assault.

The jury found Alvarado guilty of aggravated sexual assault of a child and sentenced him to 99 years' confinement. Alvarado appeals his conviction.

**Legally Sufficient Evidence Supports the Judgment**

In his first issue, Alvarado contends that the evidence is legally insufficient for four reasons: (1) Joan never testified that her anus was contacted or penetrated; (2) Joan never saw the assailant's penis; (3) Joan failed to identify Alvarado in court; and (4) there was no direct witness, DNA evidence, or other physical evidence. Alvarado argues that a jury could have found only that an unknown person touched Joan's buttocks without her consent, that the touching was offensive and caused pain, and that the touching was done by an unknown means.

**A.     Standard of review and applicable law**

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010); *Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Under the *Jackson* standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from that evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to witness testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The jury may choose to believe or disbelieve any part of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Inconsistencies or contradictions in a witness's testimony do not destroy that testimony as a matter of law. *McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970).

The *Jackson* standard defers to the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from "basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. An appellate court presumes the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

A person commits the offense of aggravated sexual assault of a child if— among other acts—that person intentionally or knowingly causes the contact or penetration of the anus of a child, younger than 14 years old, by the sexual organ

6

of the actor. *See* TEX. PENAL CODE ANN. § 22.021(a). The indictment in this case alleged that Alvarado "intentionally and knowingly cause[d] the contact and penetration of [Joan's] anus," requiring the State to prove intent and penetration.

**B.    Joan was not required to testify using the term "anus"**

Alvarado contends that the evidence of penetration is insufficient to support his conviction because Joan "never said her anus was contacted." A complainant's testimony is legally sufficient to support a jury finding that a defendant contacted or penetrated a particular part of the complainant's body. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978). For example, in *Bargas v. State*, a child complainant testified that the defendant put his "private spot" on her "private spot" in her "front private area" while he was "shaking up and down" and grunting. 252 S.W.3d 876, 885 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Despite the complainant's "unsophisticated terminology[,]" the complainant's detailed account of the sexual assault was sufficient to support a conviction. *Id.* at 888.

Much as the complainant in *Bargas* was able to give a sufficiently detailed description of her sexual assault, Joan stated that it "hurt" when Alvarado put his "weenie inside her butt," clarifying that he put "his thing" that he uses to urinate in her where the "poo" comes out. She also identified the "butt" using anatomical drawings. Joan did not use the word "anus"; however, a child complainant does not

need to use the exact statutory language in describing the genitals or other body parts. *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977); *Carr v. State*, 477 S.W.3d 335, 340–41 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Bargas*, 252 S.W.3d at 888. Joan testified that after Alvarado penetrated her, his body moved back and forth. Based on Joan's testimony, the jury could reasonably infer that Alvarado penetrated Joan's anus.

## C.     Seeing defendant's sexual organ

Alvarado also argues that, because Joan "admitted she never saw the penis," there is insufficient evidence to prove that any contact or penetration was by his sexual organ. A complainant may rely on senses other than sight to conclude that contact with an assailant's sexual organ occurred. *Carr*, 477 S.W.3d at 340–41. In *Carr v. State*, the defendant blindfolded the complainant and told her to lick peanut butter off his "finger," but the complainant believed the peanut butter was actually on his "private part." *Id.* at 340. The complainant said that the object she licked did not feel like a finger or an inanimate object, like a spoon. *Id.* The complainant also testified to an earlier incident of anal sex with the defendant, and that testimony supported the complainant's ability to discern that the object was the defendant's penis. *Id.* at 338–39. The court held that the evidence was sufficient to conclude that the complainant had contact with the defendant's sexual organ. *Id.* at 341.

Just as the complainant in *Carr* believed the defendant's sexual organ contacted her based on its feel, Joan testified that Alvarado "put his weenie inside her butt" and told the forensic examiner that she felt something "sticking up" as well as something "squishy." Also, as with the previous sexual encounter experienced by the complainant in *Carr*, Joan told the forensic examiner in detail about a previous incident of anal sex with Alvarado and stated that he had assaulted her in that manner five to ten times in total. She testified that Alvarado penetrated her with his "weenie," identifying a "weenie" by circling the penis on an anatomical drawing. Joan also described feelings of pain and weakness. She also testified that Alvarado's hands were pressing on her stomach throughout the sexual encounter, indicating that Alvarado did more than "offensively touch" Joan. Joan's feelings of pain, description of Alvarado's hand placement and body motion, and ability to identify the penis are all consistent with the conclusion that Alvarado penetrated her anus with his sexual organ, not his finger or an unknown object. Although Joan never saw Alvarado's penis during this encounter, there is sufficient evidence for a rational jury to have concluded that Joan knew what Alvarado's sexual organ felt like and that he caused the penetration of her anus with his sexual organ.

**D.      Joan's identification of Alvarado**

Alvarado further argues that there was insufficient evidence to prove that he was the assailant because Joan "utterly failed to identify [Alvarado] in open court." Identity can be proven by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Conelly v. State*, 451 S.W.3d 471, 475 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Failure to identify the defendant on one occasion does not discredit the witness's testimony as a matter of law but only provides evidence for a jury to weigh the witness's credibility. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). For example, in *Jones v. State*, the complainant was unable to identify her assailant in the courtroom, but she correctly identified him in a photo. No. 10-08-00261-CR, 2007 WL 3858016, at *2 (Tex. App.—Waco Nov. 18, 2009, pet. ref'd) (mem. op., not designated for publication). The complainant also knew her assailant's name and referred to him as her uncle. *Id.* Using the *Jackson* standard for legal-sufficiency review, the court in *Jones* held that there was sufficient evidence of the assailant's identity to deny a motion for directed verdict. *Id.*

Although Joan was initially unable to identify Alvarado as the assailant in court, a rational jury could have concluded that Alvarado was the assailant based on Joan's testimony, her mother's testimony, and other circumstantial evidence. Joan identified Alvarado multiple times and in multiples ways, despite her initial

inability to identify him among the people in the courtroom. She identified Alvarado as the person she called "Dad," knew that he was her mother's husband, and subsequently correctly identified him in court when her attention was called to the defense table, after her initial failure to do so. Joan's testimony, during both the forensic interview and the trial, described the entirety of the sexual assault inside the bathroom with Alvarado. And Joan's mother's testimony that Alvarado was in the bathroom with Joan when she came home corroborated Joan's identification of Alvarado as the assailant.

## E.    Physical evidence of trauma is not necessary for a conviction

Finally, Alvarado argues that the evidence is insufficient because "no other witnesses had personal knowledge of the assault, no anal trauma was detected, [and] no incriminating DNA, fingerprints, or other physical evidence was produced." But neither DNA evidence nor other physical evidence of trauma or abuse is required to support a sexual-assault conviction. *Bargas*, 252 S.W.3d at 888; *Pena v. State*, 441 S.W.3d 635, 641 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07 (complainant's testimony is sufficient to support conviction); *Garcia*, 563 S.W.2d at 928 (same). A detailed account of the sexual encounter is sufficient to support a sexual-assault conviction. *Bargas*, 252 S.W.3d at 888; *see* TEX. CODE CRIM. PROC. ANN. art. 38.07. Joan gave such an account.

11

Further, a rational jury could credit Domingue's testimony that the absence of physical trauma at the time of the examination was consistent with the assault alleged. Although Joan's medical examination—conducted three days after the assault occurred—revealed no tears or bruising on or inside the anus, Domingue testified that it was common to find no evidence of trauma to a child after that time period because a child's body heals quickly. Indeed, she testified based on professional literature and her experience that only 1 to 3 percent of confirmed child complainants of sexual assault to the anus show any physical symptoms of trauma to the anus when examined. The jury could rationally have credited this testimony.

Viewing the evidence in the light most favorable to the verdict, we hold that the jury could rationally have determined that Alvarado sexually assaulted Joan in the manner alleged in the indictment, and the evidence therefore satisfies the *Jackson* standard for legal sufficiency. *See Jackson*, 443 U.S. at 318–20, 99 S. Ct. at 2788–89; *Brooks*, 323 S.W.3d at 894–913. Accordingly, we overrule Alvarado's first issue.

**Factual-Sufficiency Review Has Been Abolished**

In his second issue, Alvarado argues that the evidence is factually insufficient to support the jury's verdict of guilty. To support his argument, he

12

relies entirely on *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny.

The Court of Criminal Appeals, however, has expressly overruled *Clewis* and abolished factual-sufficiency review of issues on which the State bore the burden of proof at trial. *See Brooks*, 323 S.W.3d at 894–95 (plurality op.); *id.* at 926 (Cochran, J., concurring); *see also Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011) (explaining that *Brooks* "abolished factual-sufficiency review"). Thus, "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 895.

We have already held that the evidence is legally sufficient under the *Jackson* standard to support the jury's verdict. Alvarado's second issue therefore presents nothing for our review and is overruled.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Justices Jennings, Keyes, and Brown.

Justice Jennings, concurring.

Do not publish. TEX. R. APP. P. 47.2(b).