**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00113-CR

———————————

## CRAIG SANDERS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case No. 16CR1430

## MEMORANDUM OPINION

A jury found appellant, Craig Sanders, guilty of the felony offense of evading

arrest, or detention, in a motor vehicle.[1]  After he pleaded true to the allegations in

---

[1]     *See* TEX. PENAL CODE ANN. § 38.04 (Vernon 2016).

two enhancement paragraphs that he had twice been previously convicted of felony offenses, the jury assessed his punishment at confinement for forty-five years. In two issues, appellant contends that the evidence is insufficient to support his conviction and the trial court erred in admitting certain evidence.

We affirm.

## Background

Texas City Police Department ("TCPD") Officer C. Ham testified that on May 26, 2016, while on patrol around midnight, he performed a "keep check" of the parking lot of the Economy Lodge hotel in Galveston County, Texas to "check[] for any illegal activity or . . . anything that need[ed] to be addressed." (Internal quotations omitted.) As he drove his patrol car through the parking lot, Ham saw a parked car, a silver Chrysler Sebring (the "silver car"), with "back-end damage" and an expired registration. Ham subsequently left the Economy Lodge hotel's parking lot, drove "half a block," and parked his patrol car in the parking lot of a hair salon.

As Officer Ham sat in his parked patrol car, he saw the silver car exit the parking lot of the Economy Lodge hotel and drive down the road. Because Ham knew that the car had an expired registration, he followed it in his patrol car so that he could make a traffic stop. As Ham drove a short distance behind the silver car with his patrol car's emergency lights activated, the silver car continued on. After the silver car made a sudden turn, Ham "bumped [his patrol car's] siren . . . a couple

2

of times" to get the driver's attention. The silver car then accelerated quickly and "took off."

After the silver car had driven a little farther, Officer Ham saw the driver's side door of the car open and the driver jump out and start running. The driver of the silver car was "a black male[,] wearing a black shirt with some white lettering on it" and black shorts, with white trim. Ham stopped his patrol car and attempted to follow the driver; however, he stopped his pursuit when he heard the silver car hit a curb and start rolling backwards "through the roadway and toward[] some parked cars." Other law enforcement officers subsequently arrived at the scene, but they did not locate the driver.

Officer Ham returned to the Economy Lodge hotel at around 1:43 a.m. to view its surveillance videotape recording from that night. After speaking with the hotel clerk, Rhitejak Nikhil Ingreji, Ham viewed the videotape recording. He saw "a subject come out of . . . [r]oom 236" and "walk directly towards the camera," wearing the same clothing[2] that Ham had seen the driver of the silver car wearing when he "jumped out of the car and ran." The person in the videotape recording then walked downstairs, got into the silver car, and drove around the hotel's parking lot to leave.

---

[2]    Officer Ham described the person in the videotape recording as "a black male, wearing a black [t]-shirt with white logos on the front, with black shorts with white trim."

3

After viewing the surveillance videotape recording, Officer Ham proceeded to room 236. A woman answered the door, and Ham received consent to enter the room. He then saw a pair of shorts and "a black [t]-shirt laying on the foot of the bed," which matched the ones worn by the driver of the silver car. Ham noted that the black shirt was "fairly wet . . . maybe from sweating." When appellant exited the bathroom in the room, he appeared "a little winded," was sweating, and was not wearing a shirt.

Officer Ham further testified that he first saw the black shirt that he found in room 236 when the driver of the silver car "jumped out of the [car] and took off running." He next saw the black shirt while viewing the surveillance videotape recording from the Economy Lodge hotel. He then saw the same black shirt on the floor of room 236, after the woman answered the hotel room door. The trial court admitted into evidence the actual black shirt and shorts collected by Ham from the Economy Lodge hotel room. Ham noted that the silver car was registered to a person named Fabio Mejia.

During Officer Ham's testimony, the trial court admitted into evidence State's Exhibit 3, the videotape recording from Ham's patrol car. In that videotape recording, a black male, wearing a black shirt, with a white logo, and dark shorts, with white trim, can be seen exiting a silver car and running away. The trial court also admitted into evidence State's Exhibits 1A and 1B, the surveillance videotape

4

recording from the Economy Lodge hotel. In that videotape recording, a black male, wearing a black shirt, with a white logo, and dark shorts, with white trim, can be seen exiting a hotel room, getting into a silver car parked in the hotel's parking lot, and driving away. While watching the surveillance videotape recording during trial, Ham noted that at 12:30 a.m. on May 26, 2016, the driver of the silver car can be seen getting into the car. At 12:32 a.m., the silver car is shown exiting the Economy Lodge hotel's parking lot. And at 12:33 a.m., Ham attempted to stop the silver car.

### Sufficiency of Evidence

In his first issue, appellant argues that the evidence is insufficient to support his conviction because it "conclusively establishes a reasonable doubt concerning his identity as the driver of the [silver car]" and "there is only a modicum of evidence linking the driver of the [silver car] to motel room 236."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference

5

to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

We note that in reviewing the sufficiency of the evidence, a court must consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (evidence-sufficiency standard of review same for both direct and circumstantial evidence). Circumstantial evidence is just as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *See Wise*, 364 S.W.3d at 903; *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13.

A person commits the offense of evading arrest, or detention, "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a) (Vernon 2016). If the person "uses a vehicle" while "in flight," the offense is a third-degree felony. *Id.* § 38.04(b)(2)(A). A person commits the offense "only if he knows a [law enforcement] officer is attempting to arrest [or detain] him but nevertheless refuses to yield to a police show of authority." *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). The State may prove a defendant's identity by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Conelly v. State*, 451 S.W.3d 471, 475 (Tex. App.— Houston [1st Dist.] 2014, no pet.).

Here, Officer Ham testified that on May 26, 2016, while on patrol around midnight, he performed a "keep check" of the parking lot at the Economy Lodge hotel. (Internal quotations omitted.) As he drove his patrol car through the parking lot, he saw the silver car with "back-end damage" and an expired registration. Ham then left the Economy Lodge hotel's parking lot, drove "half a block," and parked his patrol car in the parking lot of a hair salon.

Officer Ham subsequently saw the silver car exit the parking lot of the Economy Lodge hotel and drive down the road. Because Ham knew that the car had an expired registration, he followed it in his patrol car so that he could make a traffic stop. Ham drove a short distance behind the silver car with his patrol car's emergency lights activated, but the silver car continued on. After the silver car made a sudden turn, Ham "bumped [his patrol car's] siren . . . a couple of times" to get the driver's attention. The silver car then accelerated quickly and "took off."

After the silver car had driven a little farther, Officer Ham saw the driver's side door of the car open and the driver jumped out and start running. The driver of the silver car was "a black male[,] wearing a black shirt with some white lettering on it" and black shorts, with white trim. Neither Ham nor any other law enforcement officer that arrived at the scene was able to locate the driver.

Officer Ham subsequently returned to the Economy Lodge hotel at around 1:43 a.m. and viewed the surveillance videotape recording from that night. While viewing the videotape recording, he saw a person "come out of . . . [r]oom 236" and "walk directly towards the camera," wearing the same clothing that Ham had seen the driver of the silver car wearing when he "jumped out of the car and ran." The person, "a black male[,] wearing a black [t]-shirt with white logos on the front, with black shorts with white trim," walked downstairs to the silver car, got in the car, and drove around the hotel's parking lot to leave.

8

After viewing the surveillance videotape recording, Officer Ham proceeded to room 236, i.e., the room from which he saw the driver of the silver car leaving. A woman answered the door, and Ham received consent to enter the room. He then saw a pair of shorts and "a black [t]-shirt laying on the foot of the bed," both of which matched the ones worn by the driver of the silver car. Ham noted that the black shirt was "fairly wet . . . maybe from sweating." When appellant exited the bathroom in the hotel room, he appeared "a little winded," was sweating, and not wearing a shirt.

During Officer Ham's testimony, the trial court admitted into evidence State's Exhibit 3, the videotape recording from Ham's patrol car. In that videotape recording, a black male, wearing a black shirt, with a white logo, and dark shorts, with white trim, can be seen exiting a silver car and running away. The trial court also admitted into evidence State's Exhibits 1A and 1B, the surveillance videotape recording from the Economy Lodge hotel. In that videotape recording, a black male, wearing a black shirt, with a white logo, and dark shorts, with white trim, can be seen exiting a hotel room, getting into a silver car that is parked in the hotel's parking lot, and driving away. While watching the surveillance videotape recording during trial, Ham testified that at 12:30 a.m. on May 26, 2016, the driver of the silver car can be seen getting into the car. At 12:32 a.m., the silver car is shown exiting the

9

Economy Lodge hotel's parking lot. And at 12:33 a.m., Ham attempted to stop the silver car.

According to Officer Ham, he first saw the black shirt that he found in room 236 when the driver of the silver car "jumped out of the [car] and took off running." He next saw the black shirt while viewing the surveillance videotape recording from the Economy Lodge hotel. He then saw the same black shirt on the floor of room 236, after the woman answered the hotel room door. The trial court admitted into evidence at trial photographs of the black shirt and shorts found on the floor of room 236, and the actual articles of clothing collected by Ham from the hotel room.

The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). And we defer to the jury to resolve conflicts in the evidence, weigh the evidence, and draw reasonable inferences from it. *Hooper*, 214 S.W.3d at 13.

Here, the jury was able to compare appellant and the actual clothing items that were recovered from the Economy Lodge hotel room with the person and the clothing items seen in the videotape recordings and photographs that were admitted into evidence. *See Flowers v. State*, 220 S.W.3d 919, 925 (Tex. Crim. App. 2007); *see, e.g.*, *Stubblefield v. State*, No. 01-16-00644-CR, 2017 WL 2645040, at *4 (Tex. App.—Houston [1st Dist.] June 20, 2017, no pet.) (mem. op., not designated for

10

publication) (fact finder could compare man seen in videotape recordings and photographs to defendant in courtroom); *Perales v. State*, No. 02-13-00458-CR, 2014 WL 3778275, at *2 (Tex. App.—Fort Worth July 31, 2014, no pet.) (mem. op., not designated for publication) (evidence sufficient to identify defendant as burglar where videotape recording displayed several characteristics of defendant and fact finder able to compare man in footage with defendant in courtroom); *Conyers v. State*, 864 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (jury could compare photographs admitted into evidence with appearance of defendant).

Further, although appellant asserts that "the only evidence linking [him] to the offense is circumstantial," circumstantial evidence, as previously noted, is just as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *see also Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) ("Evidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence.").

Viewing all of the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of the offense of evading arrest, or detention, in a motor vehicle beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 38.04. Accordingly, we hold that the evidence is sufficient to support appellant's conviction.

We overrule appellant's first issue.

## Admission of Evidence

In his second issue, appellant argues that the trial court erred in admitting into evidence State's Exhibits 1A and 1B, the surveillance videotape recording from the Economy Lodge hotel, because "[t]he affidavit intending to authenticate" the videotape recording failed to do so and he was harmed by the admission of the evidence.[3] *See* TEX. R. EVID. 902(10) (self-authenticating evidence).

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker*

---

[3] We note that the State, in its brief, asserts that appellant did not preserve his admission-of-evidence complaint for appellate review because "[h]is argument on appeal does not comport with any of his trial objections." To preserve the issue of erroneously admitted evidence, a party must make a timely and specific objection and obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *see also Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016) (party must state grounds for objection with enough specificity to make trial court aware of complaint). A party "must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the [trial court] to understand him at a time when the trial court is in a proper position to do something about it.'" *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). A party also fails to preserve error when the contention urged on appeal does not comport with the specific complaint made in the trial court. *See Thomas*, 505 S.W.3d at 924; *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Here, due to our disposition of appellant's second issue, we do not address whether appellant preserved for our review his complaint about State's Exhibits 1A and 1B. *See* TEX. R. APP. P. 47.1; *Cruz-Escalante v. State*, 491 S.W.3d 857, 860 n.3 (Tex. App—Houston [1st Dist.] 2016, no pet.) (declining to address whether defendant preserved complaint).

*v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd).  A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles.  *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  When considering a trial court's decision to admit evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement."  *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted).  We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling.  *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Appellant argues that the affidavit attached to State's Exhibits 1A and 1B and signed by Rhitejak Nikhil Ingreji, the custodian of records for the Economy Lodge hotel, is inadequate because it fails to state that Ingreji was "familiar with the manner in which [the Economy Lodge hotel's] records are created and maintained by virtue of [his] duties and responsibilities" and no other language in the affidavit expresses that Ingreji was "aware of how records [were] kept because of his responsibilities at the Economy Lodge [hotel]."  *See* TEX. R. EVID. 902(10)(B) (affidavit sufficient if it includes language affiant "familiar with the manner in which its records are created and maintained by virtue of [his] duties and responsibilities," but noting such language not specifically required).

The Texas Rules of Evidence allow the admission of records kept in the course of regularly conducted activities. TEX. R. EVID. 803(6). To be properly admitted under rule 803(6), the proponent must prove that the record was made at or near the time of the events recorded, from information transmitted by a person with knowledge of the events, and made or kept in the course of a regularly conducted business activity. *Id.*; *see also Haq v. State*, 445 S.W.3d 330, 334 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Reyes v. State*, 48 S.W.3d 917, 921 (Tex. App.—Fort Worth 2001, no pet.). The predicate for admission of a business record may be established by an affidavit that complies with Texas Rule of Evidence 902(10). TEX. R. EVID. 803(6), 902(10); *see also Dominguez v. State*, 441 S.W.3d 652, 657 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Rule 902(10) . . . provides a cost-effective method of authenticating business records; it allows business records to be authenticated by an affidavit that substantially conforms to the model affidavit provided in the rule, rather than by live testimony."); *Reyes*, 48 S.W.3d at 921. The predicate witness does not have to be the record's creator or have personal knowledge of the contents of the record. *Canseco v. State*, 199 S.W.3d 437, 440 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Reyes*, 48 S.W.3d at 921; *Brooks v. State*, 901 S.W.2d 742, 746 (Tex. App.—Fort Worth 1995, pet. ref'd). The witness need only have personal knowledge of the manner in which

14

the records were prepared. *Canseco*, 199 S.W.3d at 440; *Reyes*, 48 S.W.3d at 921; *Brooks*, 901 S.W.2d at 746.

Rule 902(10)(B) provides a sample form of an affidavit, which complies with the rule, but it also states that an affidavit which substantially complies with the provisions of the rule shall suffice. *See* TEX. R. EVID. 902(10)(B) (noting form provided "not exclusive"); *see also Dominguez*, 441 S.W.3d at 657; *Reyes*, 48 S.W.3d at 921; *Fullick v. City of Baytown*, 820 S.W.2d 943, 944 (Tex. App.—Houston [1st Dist.] 1991, no writ) ("Rule 902(10) provides that the form set out in the rule is not exclusive, and that an affidavit which substantially complies with the affidavit set out in the rule will suffice.").

Ingreji testified in his affidavit, attached to State's Exhibits 1A and 1B, as follows:

> My name is Rhitejak Nikhil Ingreji, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:
>
> I am the custodian of records of the Economy Lodge. Attached hereto are Two (2) . . . disk(s) of records from the Economy Lodge. These said Two (2) . . . disk(s) of records are kept by the Economy Lodge in the regular course of business, and it was the regular course of business of for an employee or representative of the Economy Lodge, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

15

Ingreji averred that he is the custodian of records for the Economy Lodge hotel; State's Exhibits 1A and 1B, which were attached to his affidavit, were kept in the regular course of business; State's Exhibits 1A and 1B were made by an employee or representative of the Economy Lodge hotel with knowledge of the events; and the employee or representative made the records at or near the time of the event. Thus, Ingreji's affidavit substantially complies with Texas Rule of Evidence 902(10). *See* TEX. R. EVID. 902(10)(B); *Reyes*, 48 S.W.3d at 921–22; *see also Dominguez*, 441 S.W.3d at 657; *Fullick*, 820 S.W.2d at 944.

Accordingly, we hold that the trial court did not err in admitting into evidence State's Exhibits 1A and 1B, the surveillance videotape recording from the Economy Lodge hotel.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Do not publish. TEX. R. APP. P. 47.2(b).

16